CHARLES STREET GARAGE COMPANY *vs.* MEYER KAPLAN.

Suffolk.    November 13, 1942. — December 29, 1942.

Present: FIELD, C.J., DONAHUE, QUA, COX, & RONAN, JJ.

*Damages*, For breach of contract, Nominal. *Sale*, Damages. *Words*, "Available market," "Market or current price."

With respect to breach of a contract to purchase an automobile from a dealer at retail, the words "market or current price" in G. L. (Ter. Ed.) c. 106, § 53 (3), mean the retail price, not the wholesale price; and, there being no evidence that upon the breach by the purchaser the seller could not obtain a price for the automobile in the retail market at least as great as the contract price, the seller was entitled to nominal damages only, although the wholesale market price was substantially less than the contract price.

CONTRACT.    Writ in the Municipal Court of the City of Boston dated July 22, 1941.

There was a finding for the plaintiff in the sum of $136.08 and interest by *Keniston*, J. The Appellate Division ordered judgment entered for the plaintiff in the sum of $1. The plaintiff appealed.

The judge gave the defendant's seventh request for ruling, as follows: "7. The plaintiff, in this case, as a dealer is not entitled to recover as damages a loss of profits, where a buyer refuses to accept delivery of an automobile." The defendant's motion "to correct" this ruling, referred to in

the opinion, was as follows: "Now comes the defendant in the above-entitled matter and says that since the finding of the court upon the facts and evidence in the case actually represents the loss of profits to the plaintiff, the granting of his request for ruling No. 7 is inconsistent and incompatible with the finding of damages for the plaintiff. Wherefore, the defendant moves that the court correct his ruling upon the said request."

*J. A. Kline,* for the plaintiff.

*W. Kopans,* for the defendant.

Cox, J. The plaintiff seeks to recover damages for the failure of the defendant to accept delivery of an automobile which the latter agreed in writing to purchase, at retail, for $1,105, the list retail price, less a discount of $100. The plaintiff, an "authorized dealer," purchased the automobile from another dealer for $858.92, which was the "list wholesale price," and when it was offered for delivery to the defendant on July 18, 1941, he refused to accept it. The plaintiff then endeavored to sell the automobile, and, on August 8, 1941, exchanged it with another dealer for one identical in all respects except as to color, and which it immediately sold to a customer for $1,105, together with $76 for a radio and heater. The plaintiff paid nothing for the exchange, it being "an even swap."

The plaintiff, in answer to interrogatories, stated that the market or current price of the automobile in question at the time it claimed that it was ready for delivery, and also at the time it claimed it should have been accepted by the defendant, was $1,105. The trial judge, as requested by the defendant, instructed himself that, if the plaintiff was entitled to recover, the measure of damages was governed by G. L. (Ter. Ed.) c. 106, § 53 (3); that an automobile was a chattel that was commonly bought and sold in the market; that the measure of damages for failure to accept such an automobile was the difference between the contract price and the market "value" at the time stipulated for delivery; that a dealer in automobiles, chattels commonly bought and sold in the market, could recover in damages only the difference between the contract price and the market value at

the time the automobile should have been accepted, or, if no time was fixed for acceptance, then at the time of the refusal of the purchaser to accept; and that the plaintiff, as a dealer, was not entitled to recover as damages a loss of profits where a buyer refused to accept delivery of an automobile. He denied the sixth request of the defendant, that there being no evidence that the plaintiff could not sell the automobile at a market price at least equal to that which the defendant had agreed to pay, the plaintiff was bound by the rule of damages contained in said § 53 (3), giving as his reason that he found that the "fair market value" was not equal to the amount that the defendant had agreed to pay. He found that the fair market value of the automobile was $858.92, that is, the "list wholesale price"; that the defendant agreed to pay $1,005; and that he made a deposit of $10. His ultimate finding was for the plaintiff in the sum of $136.08, together with interest from the date the defendant refused to accept delivery. In other words, he found for the plaintiff in a sum which is the difference between the agreed price less the amount of the deposit, and the "list wholesale price." The defendant, by motion, requested the trial judge to correct his ruling that the plaintiff was not entitled to recover as damages a loss of profits. See *Di-Lorenzo* v. *Atlantic National Bank of Boston*, 278 Mass. 321, 323, 324. This motion was denied. The Appellate Division ordered entry of judgment for the plaintiff in the sum of $1.

The uniform sales act, G. L. (Ter. Ed.) c. 106, § 53 (3), provides that, if there is an available market for the goods in question, the measure of damages, in the absence of special circumstances showing proximate damage of a greater amount, shall be the difference between the contract price and the market or current price at the time when the goods ought to have been accepted, or, if no time is fixed for acceptance, then at the time of the refusal to accept. In *Clark* v. *Henshaw Motor Co.* 246 Mass. 386, decided in 1923, it was said, at page 388: "It is matter of common knowledge that an automobile is a chattel commonly bought and sold in the market. The measure of damages for failure to deliver according to the contract was the difference between the

contract price and the market value at the time stipulated for delivery. G. L. c. 106, § 56 (3)." *Snelling* v. *Dine,* 270 Mass. 501, 508, and cases cited. We assume that the words "available market" in said § 53 (3) mean an existing market that is available to the plaintiff. See *Breding* v. *Champlain Marine & Realty Co. Inc.* 106 Vt. 288, 295. Probably there is no distinction between market price and current price. See *Sloan* v. *Baird,* 162 N. Y. 327, 330.

We are of opinion that the words "market . . . price" in said § 53 (3), as applied to the facts in the case at bar, refer to the price at which automobiles are sold at retail, rather than to their wholesale price. See *Marshall* v. *Clark,* 78 Conn. 9, 11. It seems apparent that the trial judge, however, was of opinion that these words referred to the wholesale price. If there is any difference between the words "market price" and "market value" (see *Bradley* v. *Hooker,* 175 Mass. 142; *E. Kronman, Inc.* v. *Bunn Bros. Inc.* 265 Mass. 549, 553; *Kingsley* v. *Spofford,* 298 Mass. 469, 475; *Commissioner of Corporations & Taxation* v. *Worcester County Trust Co.* 305 Mass. 460, 462), nevertheless we are of opinion that the trial judge, in the use of the words "fair market value" in his finding, had in mind the words "market . . . price" appearing in said § 53 (3). His finding that the fair market value of the automobile was, in effect, the list wholesale price, was not warranted, and we are of opinion that it was error to deny the defendant's sixth request. *Rosenthal* v. *Green,* 247 Mass. 153, 156.

The plaintiff relies upon the cases of *Torkomian* v. *Russell,* 90 Conn. 481, and *Stewart* v. *Hansen,* 62 Utah, 281, but we are of opinion that those cases do not state the rule in this Commonwealth that is applicable to the permissible findings in the case at bar. The Appellate Division was right in ordering judgment for the plaintiff for nominal damages. *Centennial Electric Co.* v. *Morse,* 227 Mass. 486, 491.

*Order of Appellate Division affirmed.*